Thank you, and may it please the Court, this is Tejinder Singh for the Appellant UPPI. I'll start with the appellate jurisdiction question the Court ordered the parties to consider. This case resembles closely the Unified Data Services decision which the Court cited in its order. There, this Court held that despite acknowledging that amendment of the complaint might not be futile, the District Court did not grant leave to amend, and that omission combined with the District Court Clerk's entry of judgment on the same day demonstrates that the dismissal order was final and appealable. In this case, on September 29, 2021, the District Court dismissed our complaint and ordered the Clerk to close the file. The Clerk entered final judgment the same day, and although the Court did not foreclose amendment, neither the opinion nor the judgment granted leave to amend. And under, so under Unified Data, we think that judgment is also final and appealable for exactly the same reasons this Court found. If there are no questions about that, I'll go on to the merits. And on the merits, this Court should reverse. Taking the allegations in our complaint is true. What the defendants did is a scam, pure and simple. It's known as a rent-to-vet scheme, and its purpose is to enable a large business like Cardinal Health to obtain an unfair advantage in government contracting by essentially paying kickbacks to small, service-disabled, veteran-owned businesses who are willing to exploit their preferred status to win contracts they have no intention of performing. The entire venture is dishonest and illegal, and similar schemes have resulted in False Claims Act cases, criminal prosecutions, and administrative enforcement actions. Indeed, the United States filed a statement of interest in this very case, urging that the motion to dismiss be denied, and it's pursued other FCA cases. The essence of the other side's response, the real crux of it, is not that they acted lawfully or reasonably, but that they were so blatant about their violations that the Court must infer that the government knew what was going on and acquiesced in the misconduct. But that's not a winning argument at the pleading stage, because it necessarily turns on facts that are not in the complaint, which go to who the government knew what, when they knew it, and how they reacted to that knowledge. Contrary to the defendant's framing of our allegations, we allege that the government's contracting officers did not know that the small business defendants were playing essentially no role in the performance of the contracts. We further allege that when the government found out, for example, vis-a-vis LogMet and Albuquerque, it ended the contractual relationship, and that's at excerpts of the record, page 358, a clear allegation in the complaint. Binding and persuasive case law also overwhelmingly supports our position. The three cases on fraudulent inducement that I commend most strongly to the Court are this Court's decision in Hendow, the Seventh Circuit's decision in Prose, and the Second Circuit's decision in Strzok. These cases address falsity and materiality in detail, and they all support our position here. We talked about each of these cases in some detail in our briefs, and you notice that, generally speaking, the defendants don't say much about them, but they're quite good for us, and I'll start with Hendow, this Court's binding precedent. In that case, a for-profit university was violating a law called the Incentive Compensation Ban. It was paying its recruiters by student to go out and recruit students, which is not allowed. It had signed a program participation agreement saying, we're going to abide by all the relevant laws, but it was breaking that one, and it knew it, and the Court held that that was a cognizable FCA case, and specifically on the element of materiality, there's some very good language for us which explains that even though the defendant said, look, this is just a small boilerplate condition, this is no big deal, they haven't taken a lot of enforcement actions about this, the Court said, no, we think that this is material, fraud is fraud, no matter how small, and here this was a dishonest act. That decision was reaffirmed in this Court's more recent decision in Rose v. Stevens Institute, which affirmed that even after the Escobar decision in the Supreme Court, which discussed materiality in some detail, Hendow remains good law. The Seventh Circuit's decision in prose is a great decision on Rule 9b. In that case, the plaintiff was a subcontractor for the defendant. He wasn't an insider. He didn't have access to the behind-the-scenes negotiations between the defendant and the government that resulted in the contract being awarded, and the defendant said, hey, there's not enough particularity here because he's not telling you what exactly we in our bids or in the conversations we had. And the Seventh Circuit said, that's not required at the pleading stage under Rule 9b. What he's done is he's described what the contractual requirements were. In that case, it was a requirement to provide certain services that the plaintiff knew the defendant wasn't providing. In this case, by analogy, the requirement is for the small business to actually do real work under the contracts, which the plaintiff knows the defendants weren't doing. And that was enough particularity to give the defendants notice of the allegations against them, and also to assuage the court to the level necessary that this wasn't just some spurious case brought on the basis of speculation or rumor or something made up. Indeed, there's really no dispute about what's going on in this case because, among other things, you have the contracts before you in black and white, and the contracts have the promises that the defendants made to the government about how they were going to perform and how they were not going to subcontract work to large businesses. So are you alleging then the fraud is at the inception in terms of the contracting as well as with each payment? Absolutely, Your Honor. In fact, I think this case is best conceived of as a fraudulent inducement or promissory fraud claim, which is the theory in Hendau, the theory in prose. We also claim that the invoices themselves are false claims, but really the fraud is at the inception at inducing the government to award these contracts to these small businesses when these small businesses never intended to do work under the contracts. And we have a very clear factual allegation, by the way, that all the small business defendants did was invoice the government. They never took possession of the radiopharmaceuticals. They certainly didn't compound them or handle them. They didn't deliver them. And so they did not perform the contracts. They passed all of that work on to an ineligible, large business. And that's a clear violation of the rules that prohibit exactly that, because the point of these small business contracting preferences is to give small businesses a chance to do the work, to build up their expertise, to add value and gain value from the government's programs. And that's exactly what didn't happen here. They were just mere pass-throughs, and not even pass-throughs for products. They were pass-throughs for money, and that was it. And so, yes, it was at the moment of contracting that the fraud was actualized, but we allege that the fraud occurred before and after. We allege that during the market research that preceded the solicitations, the defendants would have had to say, and we know this based on how this contracting process works, they had to say, we're capable of performing. Otherwise, the contracts would never have been set aside for these kinds of businesses in the first place. They had to say, we're capable of doing this stuff. And so we know they made those false statements too. And then we have specific examples in certain instances. So, for example, we talk about Caring Hands and its contract in Durham, and how beforehand it was specifically asked, can you perform? And specifically said, yes, we can. And so, there's a clear deception at play at the moment of contracting that taints every subsequent claim for payment, which is how these fraudulent inducement cases work. I'll just tie that to the third case that I mentioned at the top, which is the Second Circuit's Strzok decision. Strzok was a case about exactly these contracting restrictions. It was also about service-disabled veteran-owned small businesses. And it was a slightly different fact pattern, but it was the same set of legal requirements. And so it speaks very strongly to the materiality question. And what the court held there was that violation of these set-aside requirements of the restrictions that limit these contracts to service-disabled veteran-owned small businesses goes to the crux of what the government is trying to do with these programs. It held that the substantiality prong of the inquiry weighed very strongly in favor of materiality. And the same is absolutely true here, when the small businesses were adding essentially no value to the entire supply chain, but simply issuing invoices. Another point that I guess I'd like to stress is that there are a few holdings that the are particularly objectionable. The first was the district court held that the promises enshrined in the contracts themselves were irrelevant to falsity and to materiality. And the district court's rationale was the mere violation of a contract without more or a regulation without more does not make a False Claims Act case. That's a true statement, but it doesn't describe the court held in Hendow, as the Seventh Circuit has held in many cases, as pretty much everybody holds. When you make a promise and at the time do not intend to keep it, that's fraud. If you just make a promise and end up breaking it, yeah, that's not fraud. But here, they never intended to perform. They couldn't have intended to perform, because they had no capacity to do so, no licensure, no expertise, etc. And so those promises, I mean, they are statements, promises by the defendants. They signed their names to them, saying, I promise to do this, to deliver these products under these conditions, including limitations on subcontracting, and they never intended to do it. And so I think that was a particularly egregious error, and so too in materiality. The fact that the government incorporates these requirements into the contract is probative of materiality. Now, I want to turn, I guess, to what I think is the government's strongest point, which is that, or not the government's, the defendant's strongest point, which is they say, look, the government had to know. They really like paragraph 95 of our complaint, where we say sometimes the defendants would have informed the government that a cardinal was going to be involved, perhaps by handing over cardinal's license or mentioning that cardinal might be a supplier. But if you read the rest of that paragraph, it explains that even these notifications were nothing more than misleading half-truths, because they did not reveal that the small business defendants plan to do nothing to serve as the contracts. And so the district court and defendants make a big deal out of this. They say, look, some people at the VA knew they were ordering pharmaceuticals from cardinal. Some contracting officers saw cardinal's license, therefore they must have known. That is a bridge too far at the pleading stage. Although the Supreme Court has held that when the government has actual knowledge of violations and pays claims anyway, that is strong evidence of immateriality, that cannot carry the day for the defendants for two reasons. First, even if the government had actual knowledge, strong evidence of materiality does not mean legally dispositive at the pleading stage. And we've identified factors that cut the other way, that conflict means the case goes on. But second, there is no allegation or concession of actual knowledge. There is a concession that certain facts were communicated in a stilted way to the government that effectively concealed the truth. That is not the same as the cases the defendants have cited where there was actual knowledge in the form of a government investigation that made findings. I'm talking here specifically about the Foreman case from the Second Circuit, which the defendants cited a lot in their briefs. In that case, there were multiple investigations, inspector general reports, and so on, revealing the actual violations and the government kept paying. This case is nothing like that. In fact, as I mentioned earlier, when the government found out what LogMint was doing, it stopped the contractual relationship in Albuquerque. And we've identified other cases involving big protests and enforcement actions where the government has found similar misconduct and said, no more, we're not doing that. We've even identified criminal prosecutions. I'll try to hang on to the rest of the time for my rebuttal. Thank you very much. Thank you, Counsel. We'll hear from Cardinal. Thank you, and may it please the Court. My name is Brian Tully McLaughlin, and I represent Cardinal Health. I'm also arguing on behalf of the other defendants with respect to materiality and falsity and for Cardinal Health's alternative arguments for affirmance. I want to first address materiality and falsity. What is at issue here are nuclear radiopharmaceutical contracts. Each one requires a nuclear license and the operation of a nuclear pharmacy. We're not talking about supplies that you can pick up at your local drugstore. We're talking about radioactive isotopes manufactured in a uranium laboratory that has to be located close to the medical center. What's in the record here is that the contracts required the submission of proof of a nuclear license and that the small businesses provided Cardinal Health's license and pointed to Cardinal Health as the supplier to gain award. There are no allegations otherwise. Somebody with the capacity of Cardinal Health, how is this contract appropriately limited to this group of bidders, none of which appear to have the qualifications necessary? The VA has preferences to award contracts to prime contracts to small businesses and it's meant to... The businesses are presumably qualified and what you just said and what the argument in your brief suggests to me is that none of the people who bid on this contract actually were qualified and have the capacity to perform. So they had to outsource as they did in this case the successful bidders outsourced to your client but that suggests well how is it this pool of bidders is limited to a bunch of people that can't actually perform the contract? That's a decision that was made by the VA but I will note that even in these contracts and set aside contracts the regulations provide for the opportunity of waivers of requirements that might otherwise limit the involvement of a non-small entity. Was there any bidder who actually had the capacity to perform under the contract? Do you know? Does the record reflect? The record doesn't reflect any small businesses that were themselves nuclear pharmacies. That doesn't raise concern for you that somehow the notion that the people that came forward and actually could not do it that isn't a source of concern? It may be a source of concern but it doesn't make a fraud case your honor. Well if you're coming forward and saying I can bid on this contract aren't you in effect representing I'm capable of performing it except that I'm going to outsource all of it? It means capable of meeting the requirements but it does not mean that you are yourself necessarily going to perform all those requirements. But at this point isn't that discovery? That whole question of what their status was, what Cardinal knew, what the government knew? I mean the allegations here on their face show fraud at the outset which is pled here in two forms and and follow on fraud. So why at this stage is this ripe for dismissal? It just seems to me that the kind of allegations here really fall within the typical key TAM allegations that need further discovery. I think for a few reasons your honor it is right for dismissal here and that's because again first at the outset we have requirements that are in the record as to what had to be submitted to the VA for award. If proof of a nuclear license for instance was not provided to the VA the contract said that the bidder would be deemed technically deficient and could not obtain an award. And the only allegation in this complaint is that the license that was provided was Cardinal Health's. So the only conclusion that can be reached is that the the bidding parties, the small businesses, were truthful in their bid in that respect. They the fact that there may have been in some of these contracts and certainly not all of them a clause about a limitation on subcontracting is certainly undercut by the fact that the small businesses by pointing to Cardinal Health directly as well as providing its license were informing the VA that they themselves were not the manufacturers of these products. And further we have concessions that from right there in the complaint and it's not simply paragraph 95 although that's a very good one that that's exactly what the small businesses did and yet the VA awarded the contracts anyway. There are other paragraphs from paragraph 103 as well as the paragraph 69 to 78 about those requirements that only Cardinal Health that only pointed to Cardinal Health they could have shown an ability to to provide the the contracts. And of course there's there's allegations concessions I believe such as paragraph 101 that it was Cardinal Health that directly received the orders from the VA and provided the products directly to the VA. So there could there's nothing here to show that there was any kind of concealment about the fact that Cardinal Health was going to be supplying the products it was the one who manufactured them. To the extent that there might be a breach of a contract in terms of a subcontracting limitation that's far from proving a false claim. And again the fact that the VA here is ordering the products directly from Cardinal Health's pharmacy and receiving them from Cardinal Health directly shows that that for the VA what was material was the products themselves. These nuclear products. The people ordering the products want the products. I'm not sure that tells me that the people responsible for setting up the contract bid process and awarding the contract are not the line people that are ordering the products I doubt. And so I'm not sure that telling me that okay we need this product this is who we can order it from we're going to order it from and yeah it comes directly from Cardinal Health tells me that this process was set up with everybody understanding from the get-go that the successful bidder was merely a front and that it was actually Cardinal Health that was going to do 99 percent of the work under the contract and receive 99 percent of the revenue. Is there any evidence suggests that the people responsible for setting up the bidding process and for awarding the contract knew what I just said that it was all really Cardinal Health and that the bidder was a front? Yes there is your honor. It's not just the paragraphs I've pointed to but it is the fact that for instance with respect to one of the contracts the one in Denver there was an express waiver of any subcontracting limitation that a contracting officer had to request. In another contract the Dorn contract no waiver was requested ahead of time but in extending the contract through a bridge award the contracting officer directly said that he had not previously asked for a waiver but that he might in the future but that he recognized that the small businesses were not manufacturing the products and that was being sourced elsewhere. So there's direct evidence and that evidence is in the record so and it also excuse me that in that same contract the contracting officer disclaimed that there had been any reliance on a subcontracting limitation and the only response that the relator has to that is that the version of the far of the one from others that are in the contract but there are multiple versions of this clause that all say the same thing and so that that's a distinction without a difference. Well in that regard you have to go through each of the contracts see what each of the claims are see what the far says etc and it seems to me that that's you know not been done here at this stage so that's what's missed at this stage and you may well have good defenses to all this but it seems to me that that is going to take more than just a legal determination at this phase. Why not? That in fact has been done your honor with respect to these contracts because in our in the defendant's motions to dismiss we attached the actual contracts in part to demonstrate the requirements that had to be met to obtain an award as well as the fact that this subcontracting limitation did not even appear anywhere in more than half of the contracts and that's that's not in dispute so that's been addressed here the district court does not rely heavily on. Let me ask you about that then on do we need to go through each of those and make a contract by contract determination because that's not really what we have here on appeal. We have we've put that forth in our brief and so I think that that can be done but I don't think it's necessary because of the other reasons we pointed to and I wanted to know let me ask you about those reasons then in terms of the materiality argument it would seem to me that your position would seem to be at odds with that second circuit case of struck would you enlighten me in terms of how your position squares or doesn't square with struck. I would disagree with that your honor. First as my colleague mentioned the facts of struck are in fact different and I think they're a lot more different than he's willing to concede. There we have a large contractor who is in fact in full control of the business or the instance that had the small business status. Here we have no allegations like that. Yes we have a set aside contract but these are arms length transactions. Cardinal Health is a supplier to the small businesses. It had a separate agreement with those small businesses to provide the contracts. There's no there's nothing here about the Cardinal Health actually having control or being the true owner or operator of those companies. In addition we have the facts that are that are alleged in this complaint that make it implausible that the small businesses could have obtained an award without providing proof of Cardinal Health's nuclear license and so again that's a disclaimer of any possibility that they were going to meet the non-manufacturer limitation which is not as as UPPI argues about quote-unquote the work. It is about who is the manufacturer of the products and there's no allegation that the small businesses claim that they were the manufacturers or anything of the sort. Only that Cardinal Health was the manufacturer. As soon as therefore as soon as Cardinal Health supplies a product there would be a facial non-compliance issue and again that might be a breach for the small businesses but it doesn't make this a fraud case. I also want to make sure that I address and I know my my colleague for the small business has time that he wishes but with respect to Cardinal Health the complaint is even further deficient because they did not knowingly cause these small businesses to make any false statements or claims. They're not the contractor with the VA. They're a third-party supplier. They made no statements to the government. They were asked to supply these products and they did so but acting as a supplier doesn't automatically make them a co-conspirator with intent to defraud the government and it doesn't show that they cause these small businesses to actually say anything inaccurate to the VA and with respect to Center the complaint asserts merely that Cardinal Health must have known that there was a subcontracting limitation because it's a big sophisticated company but it doesn't identify anyone at Cardinal Health that even knew of a subcontracting limitation in small business contracts or that it applied here or that it was potentially being violated and in addition again the complaint pleads that Cardinal Health was interacting directly with the VA to receive the orders and supply the products. That is not the conduct of a party who is intending to defraud the government or who has knowledge that their actions might be running afoul of a contract provision for another party. So I'm over my time so for all those reasons and those in our briefs we respectfully ask that the judgment of the lower court be affirmed. You may proceed. We'll give you your full minute. You're muted I think. Can you hear me now? Yes. Okay so my name is Ed Tolchin and I represent the company and one of the owners of one of the companies in this case Caring Hands and O.B. Bacon. Now we're a real business. Caring Hands is a real business has been a real business for many many years and so is LogMet and we're really the tails in this fight and I wanted to answer one of the questions that you asked just so just so it's clear. The VA wanted this to happen the way it did is because having Caring Hands in front allowed the VA to claim what's called Goaling Credit. VA is supposed to be using STVOSB's or VOSB's. They're supposed to be using veteran-owned or disabled veteran-owned small businesses and if they had Caring Hands as the contractor they can claim that credit and that's what they were interested in and that's why we they knew everything that was going on and that's why we told them we don't have a license. VA says we don't care. That's why we told them we can't manufacture this. We're not people that can make nuclear medicines. VA said we don't care. So in order for there to be fraud there has to be materiality and there can't be materiality because Caring Hands and LogMet but Caring Hands clearly told everything to VA and VA's response consistently was we don't care and that's what that's what this case really comes down to. You can't have a material misrepresentation when my client came to the VA and said we're not the supplier. We don't have a license. We can't even be the distributor because we don't have a license and distributors need the license. We don't have facilities within 90 minutes or 30 minutes or 90 minutes of these hospitals. We have no ability to do this. VA says we don't care and that's why this case fells on its face and the fact that we're here on a motion to dismiss. What are those allegations stated in the complaint? The facts you just related to us? Well in the complaint in paragraph 95 it says Caring Hands explained we don't have a nuclear license. Caring Hands explained that we were supplying we were supplying products from Cardinal. Caring Hands identified Cardinal as the source and in fact if you look at the contracting officer acknowledges that he knows that Caring Hands is not the manufacturer. You're making powerful arguments with regard to the actual facts but we're here on a motion to dismiss and in all candor I read paragraph 95 as saying substantially something less and different from everything you've related to us. It may well be the VA is in on the scam and nobody was fooling the VA but that's not what the complaint says and we're here. Right except the complaint. Why should we be considering the additional facts you're offering to us? Because the contracts are incorporated into the complaint and therefore the contracts are part of the complaint. Can you point to something in the contract that says the VA knows all this and knows that that your client Caring Hands is simply a what a beard a front that we that we are motivated to issue a contract to this organization even though this organization is not going to do anything? Where in the contract does it say that? You can look at for example the ER 295 where it says directly supplier is cardinal not us. You can look at. Okay stop stop so but you were telling us the VA set this up. They did it deliberately. They knew all of this and you're pointing to a provision that says the supplier will be cardinal which is substantially less than the story you've told. Now your story sounds compelling but it doesn't sound like something that can justify a motion to dismiss. So what can justify a motion to dismiss based on the story you've told us? Because in the way this system works is that we don't get the contract simply by saying we're here. We have to submit a proposal. The proposals are in the record and the proposals all say we don't have a license. Only cardinal has the license. That's the paragraphs that that are 95 is citing and we've attached the complaint. We've attached the contracts and the proposals which say we don't have a license. We don't have the facilities. We are simply to use the UPPI's version. We are simply the front for cardinal. That is in each and every proposal and you ask whether the it matters whether it has to be in all proposals. These are all the same contracting office and officers. They all work in the same place. They're all the same people. In many cases it's the same people on all these contracts. The same contracting officers. If I tell them on April 1 they still know on May 1 even though there may be another contract. It's still all in the record that we told them in our proposals and they still said we want to use you as the supplier. Now it doesn't say in the complaint and nowhere doesn't say that the reason why they did this is because they wanted their goaling credit but that is the only plausible explanation as to why they did it even though they knew we were not the supplier. Caring Hands was not the supplier. LogNet was not the supplier. We didn't have the license. We didn't have the facilities. We couldn't even handle this equipment. Handle these medicines because we didn't have the correct licenses or knowledge to handle these licensed products. So to be similar to me telling you I'm going to deliver to the court's chambers today a nuclear weapon. I mean I can say it but you people would know the judges would know that that would be just impossible. You couldn't possibly believe that and when I tell you well I'm not really delivering my nuclear weapon I'm going to get it from the Department of Defense then you would say okay you're going to get it from the so you're not delivering your own. In other words you have to know VA had to know because we told them we didn't have the ability to deliver these nuclear medicines. So how does that in the complaint there's some allegations that the defendants were asked whether they would perform you know at least 50 percent of the work and they answered affirmatively and then you're saying but no if you look at the actual contracts and what was happening that collides with that allegation. So if the allegation in the complaint is that your clients were affirmatively saying yes we can do 50 percent of the work. How are we supposed to sort that out on an appeal from a 12b6? Because you look at the contracts and the proposals which were incorporated into the complaint which we've shown to the district court and we've shown to you and they say this is what we're doing. Now whether this is 50 percent of the work or 10 percent or one percent we told them what we were doing and I can tell you what the what the difference is is how you count that 50 percent. Do you count it based upon the number of hours you put in? Do you do it based upon the amount of money being there are different ways to count 50 percent but the government knew the VA knew what we were doing and if what we were saying was in an accurate representation of how you count that 50 the government knew that. We couldn't have fooled them because the government knew exactly what it is what we proposed to do. Now you've introduced a kind of a new fact I guess I'll call it and that is you know how do you count 50 percent of the work and that's a regulatory issue that's not specified here right? Well but that's a regulatory issue that's not a factual issue the allegation is well 50 the allegation isn't the regulation require that the bidder has to do you know 50 percent or more of the work yes is that true? It says 50 percent it's 50 percent based upon labor hours I think at that time it changed slightly since then but at that time it was labor hours 50 percent. So what you're saying is that potentially your clients could actually provide 50 percent of the labor hours and yet the licensing and the production and everything else would be the review. Sure because that's the product that the product is not part of a labor hour the labor hour is the people who are doing the billing the people who are building the calls for the orders the are all parts of labor hours. So when my client says we're doing 50 percent you look at all those labor hours and the product is not counted as part of the labor hours and that's by regulation. Look I'm not saying that this is a situation where my client where my client complied punctiliously with all of the regulations it's a situation where if we didn't comply the non-compliance was well known and easily foreseeable easily seeable and viewable by the VA and still the VA said we don't care and that's why I think I think counsel for cardinal mentioned that at some point the VA said look we know you're not the manufacturer if there's a there's an actual doctor saying we know you're not the manufacturer of course they knew but they just didn't care and that's why all these things are part of the all these parts of the proposal parts of the contract are parts of the complaint because they're incorporated into the complaint and that's why the entire complaint becomes implausible because there is no way that you can believe that the VA was fooled given everything that it was told and everything that it knew and unless the VA was fooled there may be regulatory violations but there is no fault claims act because a false claims act claim needs to show that there was a material misrepresentation in other words that the VA was fooled can't be and that's why the complaint fails on a 12b6. Thank you. Thank you counsel. We'll hear a bottle. All right. So I think Mr. Tolchin essentially just made my argument about why this is an inappropriate case to dismiss at the pleading stage. He's introduced facts that not only aren't in the complaint they aren't even in his appellate brief you know he's talking about gold credits and conversations that nobody has discussed until now and I think all of that goes to show that the other side may have a defense they want to raise factually after we've gotten the report the relevant VA contracting officers to give depositions or provide affidavits or similar there's a process for bringing these facts to the surface and the process is not a motion to dismiss. I'll speak quickly to some of the examples he gave you he wants you to look at page 295 of the excerpts of record this is the 2019 foreign contract where they say that Cardinal is the manufacturer the line right below that says the distributor is carrying hands and you will see throughout our complaint repeated references to the defendants lying and saying we'll be the distributors suggesting that they're actually going to handle products they didn't distribute anything all they did was issue invoices and those are clear allegations in the complaint the same is true of the other small business logman if you look at paragraph 99 we have a specific allegation that says the VA asked logman how can you fulfill this contract they said we have warehouses and other infrastructure that we can use to fulfill the contract they had no warehouses or other infrastructure this directly contradicts what Mr. Tolchin is telling you they told the government now and so the way to sort those facts out is not at the motion to dismiss stage it's through development of the facts. Another point that I'll point out Judge Clifton you raised a very good point that the people ordering the products aren't the people doing the contract we make that allegation as well that's in paragraph 159 where we explain that the fact that they were dealing directly with Cardinal to place the orders has no bearing on whether the government had actual knowledge the bottom line is we have well pleaded facts that deny that the government had knowledge the fact that licenses were sometimes handed over in the odd case or Cardinal was sometimes mentioned as a supplier does nothing to negate the gravamen of our allegation which is that these small businesses pretended they were going to do real and substantial work on the contracts when they knew they weren't going to and Cardinal by the way was not just some passive participant in the supply chain they didn't just get an order they were involved from the get-go we have specific allegations about this as well you'll find those I'll just get you paragraph numbers and then I'm all done paragraph 106 where we explain that only Cardinal really understood the sophisticated differences between these different isotopes the dosages the delivery requirements the handling requirements these small businesses had no clue how to do those things although they pretended they would be distributors the only reason they were able to pretend is because Cardinal gave them that information it was involved from the very beginning at least that's what we allege and if the facts show that not to be true our case will be in trouble but for now the district court's decision should be reversed thank you very much thank you counsel thank you all for your arguments this morning the case just argued will be submitted for decision
judges: THOMAS, McKEOWN, CLIFTON